NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-339

ADOPTION OF NEESA.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The father appeals from a decree issued by a judge of the Juvenile Court terminating his parental rights to his daughter, Neesa, who was eight years old at the time of trial in May 2022.[2] On appeal, the father claims that his attorney (hereinafter, counsel) was not prepared to represent him and, as a result, he was denied his right to the effective assistance of counsel. He further argues that the judge abused her discretion when she denied his motion for a short continuance once it became clear that counsel, who stated that she was not prepared, had not spoken with the father for the prior three months, had not

_____

[1] A pseudonym.

[2] The mother's parental rights were terminated at a separate trial in August 2021. She has not appealed and is not a party to these proceedings.

attended the pretrial conference, had no witness or exhibit list, and wanted to withdraw from the case and have substitute counsel appointed.  Given these circumstances, we are constrained to vacate the decree and remand the case for further proceedings.

Background.  Neesa was born in April 2014, to unmarried parents.  She lived with her mother until January 2018 when the Department of Children and Families (DCF) obtained emergency custody and placed her in a foster home that subsequently became her preadoptive home.  Neesa was residing in that home at the time of the father's termination of parental rights trial.  Neesa has never lived with the father, who was incarcerated for much of Neesa's life and was in jail on pending charges when the trial commenced.[3]  At the conclusion of a five-day trial, the judge issued detailed findings of fact and conclusions of law that amply supported her finding that the father was currently unfit and that Neesa's best interests would be served by a decree terminating the father's parental rights.  Because we conclude that the decree must be vacated, we need not recite those findings here.  It suffices to note that the judge was

---

[3] The father did not sign Neesa's birth certificate when she was born and was not recognized as her legal father until he took a paternity test following Neesa's removal from the mother's custody.

presented with substantial evidence of the father's unfitness, and, in fact, he does not argue otherwise. To the contrary, the father acknowledged at trial that he was not then ready to assume custody of Neesa.[4] He was in jail, and even though he was confident that he would soon be released, he had no firm prospects for employment or stable housing. In recognition of his inability to care for Neesa in the immediate future, he proposed that Neesa be placed with his mother (paternal grandmother). However, neither he nor counsel had contacted the paternal grandmother prior to trial to discuss that proposed plan, and she was not present at the trial. Although the paternal grandmother had, at one point, filed a petition for guardianship, the judge found that contact between Neesa and the paternal grandmother was limited and that she had not followed through with the petition. Ultimately, the judge dismissed the guardianship petition and concluded DCF's proposed permanency plan of adoption with the current preadoptive family to be in Neesa's best interests.

---

[4] The father also acknowledged that it would be difficult for Neesa to leave her preadoptive family and that Neesa would need time to adjust to a permanent change in custody. There was no dispute that by the time of trial Neesa had developed a close bond with her preadoptive family. DCF's bonding and attachment expert witness, Dr. Rachmaciej, testified that he conducted an assessment of Neesa with her preadoptive family and opined that if Neesa were to be removed from that home, she would likely suffer psychological stress and harm.

We now turn to the facts that are relevant to the father's claim that counsel did not provide him with effective assistance. A week prior to trial, on May 16, 2022, counsel filed an emergency motion to continue the trial or, in the alternative, to appoint substitute counsel. The motion was heard the day before trial commenced. At that time, counsel explained that she had just finished a year-long trial and was withdrawing from all of her care and protection cases. She acknowledged that she had not spoken with the father for the prior three months and was not prepared to go forward. Counsel further explained that, given this lack of contact, she "was not able to submit a pretrial final witness and exhibit list." She also stated that there were a few other witnesses (in addition to the paternal grandmother) that the father wanted to call to testify on his behalf. Thereafter, it came to light that counsel had not appeared for trial on a prior scheduled trial date and had not been present at the final pretrial conference. The father was present at the hearing, and he addressed the judge directly. He stated that he was unaware that a trial date had been scheduled and joined in counsel's request for additional time so that he could "get all [his] ducks in a row to handle this properly." He further indicated that he had

4

witnesses that he wanted to testify on his behalf.[5]  In response to the judge's questions as to why he had not yet contacted these witnesses, the father explained that he did not have access to his cell phone while in jail and therefore could not contact any family members.  He then informed the judge that he believed he would remain incarcerated for "no more than [sixty] days, [at] the most," and was asking for a short continuance.[6]

On the second day of trial, counsel renewed her motion to withdraw based on a breakdown in the attorney-client relationship.  That the father and counsel's relationship was in jeopardy became evident when, at a later point in the trial, the father told the judge that he believed counsel's feelings toward her own father had a deleterious effect on the attorney-client relationship.  Then, on the last day of trial, counsel raised the issue of her motion to withdraw again.  This time, counsel expressed concern that the father did not believe he was receiving adequate representation.  Counsel also requested permission for the father to present his own closing argument so that "he feels he's being effectively represented or something

---

[5] Ultimately, the father did not call any witnesses.

[6] According to the father, he was due to appear in the District Court on one of the two matters for which he was being held within a few days.  The record is not clear if this happened or whether the cases were resolved.

5

of that nature should he want to testify or give his own closing argument."  The judge denied the request but stated that she would permit the father to address the court if there was something he wanted to bring to her attention after counsel presented a closing argument on his behalf.[7]

Discussion.  "On the question of ineffective assistance of counsel, [f]irst, we look to determine whether the behavior of counsel [fell] measurably below that which might be expected from an ordinary fallible lawyer and, if so, we further inquire whether [counsel's conduct] has likely deprived the defendant of an otherwise available, substantial ground of defence.  Under the second prong, prejudice must be shown; prejudice is not shown if there is overwhelming evidence of unfitness." (Quotations and citations omitted).  Adoption of Azziza, 77 Mass. App. Ct. 363, 368 (2010).

There is no question that counsel's failure to contact the father prior to trial amounts to conduct falling measurably below that which might be expected from an ordinary fallible lawyer.  Indeed, counsel recognized her failure and, inferably, requested a continuance in order to rectify that failure.  At the same time, we recognize that the judge, knowing that the

---

[7] The judge's willingness to accommodate the father in this manner was typical of the courtesy she extended to him throughout the trial.

case had already been continued once and that Neesa was deserving of permanency, was appropriately concerned about a further delay.  Nonetheless, because the father was entitled to consult with counsel and develop a strategy before the first day of trial, a short continuance would have been the best path forward.[8]

As to the second prong, DCF and Neesa argue that the father has failed to demonstrate prejudice.  They contend that the evidence of the father's unfitness was so overwhelming that no lawyer could have accomplished more for him.[9]  Given the father's criminal history, which included violence against women, his alcohol abuse, and Neesa's fear of him stemming from an incident when she saw him assault her mother, we have no doubt that the evidence as presented warranted a finding of unfitness.  But that is not the only consideration.  This is not a case in which inadequate pretrial preparation was repaired by competent representation during the proceeding trial.  See Commonwealth v. Saferian, 366 Mass. 89, 97-98 (1974) (inadequate pretrial

_____

[8] In reaching this conclusion, we recognize that the judge was placed in a difficult position.  Indeed, although DCF was not initially opposed to a continuance, when the parties discussed the matter, it became clear that the court calendar could not easily accommodate one.

[9] At oral argument, counsel for Neesa suggested that not even "Clarence Darrow" could have accomplished more for the father.

preparation not prejudicial after court concluded "[i]t is hard to believe that in the end [after two-day trial] any aspect of the matter plausibly helpful to the defendant was ignored or skimped").  In sum, the record fails to disclose whether adequate preparation or performance during trial could have revealed any material fact or defense so as to sufficiently diminish the impact of the father's shortcomings.  Because the father was entitled to competent representation to assist him in presenting his case, a new trial is warranted.  Accordingly, we vacate the decree and remand the matter for further proceedings.

<u>So ordered</u>.

By the Court (Vuono, Rubin & Smyth, JJ.[10]),

Assistant Clerk

Entered:  May 21, 2024.

---

[10] The panelists are listed in order of seniority.

8